Argued at Pendleton May 3, affirmed July 18, rehearing denied October 3, 1922.

## UMATILLA COUNTY *v.* ESTES ET AL.

## CITY OF PENDLETON *v.* ESTES ET AL.

(208 Pac. 761.)

**Rewards—Offer of Reward and Acceptance Thereof Results in Contract.**

1. An offer of reward and acceptance of the offer before it is revoked results in a contract which imposes upon the party offering the reward an obligation to pay the same.

**Rewards—Reward Offered to Public may be Accepted by Any Part of the Public.**

2. Where a reward is offered to the public, it may be accepted by any part of the public, and such acceptance is indicated by a substantial performance of the services and accomplishment of the result for which the reward is offered.

**Rewards—Several Persons may Join in Performing Services and Become Entitled to the Reward.**

3. Where the services requested in an offer of reward are such as require or permit the co-operation of numerous individuals to accomplish the desired results, several persons by concerted action

may join in performing the services and thus become entitled to the reward which should be divided among them according to the relative value of their acts.

**Rewards—One Furnishing Information Leading to Capture of Prisoners is Entitled to Equitable Portion of Reward.**

4. One who furnished information which led to the capture of prisoners is entitled to an equitable portion of the reward offered for the capture of the prisoners, though not acting actively in concert with those who actually captured the prisoners.

From Umatilla: T. E. J. DUFFY, Judge.

In Banc.

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Thomas H. Crawford.*

For respondent Umatilla County, there was a brief and oral argument by *Mr. R. I. Keator,* District Attorney.

For respondent City of Pendleton, there was a brief and oral argument by *Mr. Harold J. Warren,* City Attorney.

For respondents Estes et al., Smith & Miles, there was a brief over the name of *Messrs. Peterson, Bishop & Clark,* with an oral argument by *Mr. Will M. Peterson.*

For respondents Steiner & Roberts there was a brief and oral argument by *Mr. James A. Fee, Jr.*

For respondent Courtney, there was a brief and oral argument by *Mr. E. R. Ringo.*

4. Sufficiency of performance to entitle person to reward offered, see notes in 8 Ann. Cas. 860; 14 Ann. Cas. 802; Ann. Cas. 1915B, 667; 7 L. R. A. (N. S.) 216; 46 L. R. A. (N. S.) 662.

McCOURT, J.—On the twenty-fifth day of July, 1920, Neil Hart and Jim Owen who were then confined in the county jail of Umatilla County, Oregon, with others broke jail, shot and killed T. D. Taylor, sheriff of that county, armed themselves and escaped into the Blue Mountains, between Pendleton and La Grande.

The following day a reward was offered for the capture of the fugitives, as follows: County of Umatilla, for the body of Neil Hart, dead or alive, $2,500; and for the body of Jim Owen, dead or alive, $1,000; City of Pendleton, for the capture of Neil Hart, dead or alive, $500; for the capture of Jim Owen, dead or alive, $250.

On the night of July 30, 1920, Hart and Owen were captured at a sheep camp in the Blue Mountains near the Toll Road and the toll-gate thereon, and were brought to La Grande and turned over and delivered alive to the proper officers of Umatilla County, who returned them to the Umatilla County jail; they were each thereafter indicted, tried and convicted of murder in the first degree. J. H. McLachlin and eight others, known and designated in the record as the La Grande posse, presented their claim to both Umatilla County and the City of Pendleton for the whole of the rewards offered for the capture of Hart and Owen. James Estes and eight others, known and designated in the record as the Pendleton posse, presented their claim to both the City of Pendleton and Umatilla County for one half of the rewards, and B. P. Courtney, Vernon Steiner, Alfred Smith, Claude Miles and others each presented a claim to an equitable share thereof.

The County Court of Umatilla County and the common council of the City of Pendleton, were each in

doubt as to who was entitled to said rewards; to resolve those doubts and prevent a multiplicity of suits, each brought suit, naming as defendants therein, all of the persons claiming said rewards or any part thereof, deposited in court the amount of the reward offered, and asked that the several defendants be required to appear and by answer set up their rights, if any, to such reward, or parts thereof, and that the court distribute and pay the same over to the parties found entitled thereto.

Afterwards the defendants appeared and answered, and issues were joined. By agreement of the parties and their respective attorneys, the two cases were consolidated and tried together at one and the same time, and the court thereafter made and entered its decrees, whereby there was awarded to the Pendleton posse one half of said rewards and to the La Grande posse the other half thereof, with the direction that out of the moneys so awarded to the La Grande posse the sum of $100 be deducted and paid to B. P. Courtney for services rendered by him, and the sum of $62.50 to Vernon Steiner for services rendered by him, and to Alfred Smith and Claude Miles the sum of $25 each for services rendered by each of them, also a portion of the costs and disbursements incurred by the plaintiffs; that out of the one half of said rewards awarded to the Pendleton posse there be deducted and paid to Vernon Steiner the sum of $62.50 for services rendered by him, and to Alfred Smith and Claude Miles the sum of $50 each for services rendered by each of them.

The defendant J. H. McLachlin and others, composing the La Grande posse, have appealed from those decrees. The defendants Steiner and Courtney each perfected a cross-appeal.

Immediately after the escape of Hart, Owen and their accomplices, and before rewards had been offered for their apprehension, a large number of citizens went into the Blue Mountains searching for them, but no trace of their whereabouts was found until July 29th, at which time the chase had been abandoned by most, if not all, of those who at first entered upon it, except those persons, or most of them, constituting the Pendleton posse and J. H. McLachlin and three or four others of those constituting the La Grande posse. All those engaged in the search at that time who are claiming the reward, or a portion thereof, were acting in concert and in some degree under the direction of the defendant Lee Warnick, sheriff of Union County. The claimant J. H. McLachlin was a deputy sheriff of Union County.

Upon July 29th the claimant Vernon Steiner, while traveling upon a trail through the Blue Mountains, leading a number of pack horses belonging to a sheep camp of which he was the tender, saw two men, one of them carrying a revolver in his hand, at some distance, moving furtively toward him along the trail. He had learned the previous day of the escape of prisoners from the Umatilla County jail and the murder of Sheriff Taylor. He at once suspected that the men he saw were the fugitives. He left the trail and hid in the brush until they passed; then proceeded upon his way with the determination to communicate to the authorities the fact that he had seen two men whom he supposed to be two of those for whom search was being made, and in a short time met the claimant E. Neibee, who, after Steiner had shown him the tracks of the men Steiner had seen, undertook to carry the information Steiner had given him to the

nearest forest ranger station, at which there was a telephone. This required a ride of several miles over forest trails, which was promptly accomplished by Neibee. The claimant B. P. Courtney was in charge of the ranger station to which Neibee traveled; upon receipt of the information, Courtney communicated by telephone with the sheriff's office of Union County and with the sheriff's office of Umatilla County, advising them of the clue to the whereabouts of the fugitives, furnished by claimant Steiner. The latter resumed his duties as sheep camp tender when he had given Neibee the information mentioned, and did nothing further in respect to the capture of Hart and Owen.

In response to the information telephoned by Courtney to the sheriff's office at La Grande, all those engaged in the search repaired as speedily as possible to a point in the Blue Mountains spoken of in the record as Green Mountain, where early the following morning they met the claimant Neibee, who furnished them in detail the information he had obtained from Steiner, together with such observations as he was able to make from his knowledge of the country and examination of the trail over which the fugitives had passed.

The mountains and trails about Green Mountain were searched and examined for some time, and the searchers becoming satisfied that the fugitives had left that vicinity, and that it was necessary to examine all the avenues of exit from the locality by traveling on foot through the mountains, it was decided to divide the posse and send a portion thereof around through the Grand Ronde Valley to intercept the fugitives in case their definite line of travel should be discovered. The claimant McLachlin is an old

man, and the claimant Noe had broken arches and was unable to travel in the mountains, so claimant Warnick directed McLachlin, Noe and some others who were likewise unable to travel to go to La Grande and remain near telephones and to keep themselves in readiness to go to the point where they might be advised the fugitives could be expected to appear, and that in the meantime they arrange for the assistance of Dan Murchinson, who was familiar with the mountains and the trails therein.

Thereupon those designated as the Pendleton posse, including claimant Neibee, took up the search, and after some hours came upon the trail of the fugitives, from which it appeared they were headed in a northerly direction toward the toll road. In the meantime the claimant Courtney, being familiar with the forest trails, had attempted to follow the trail of the fugitives from the point where they had been seen by claimant Steiner, and while he did not secure any definite trace of the line of travel of the fugitives from that point, he determined from what he did find and his knowledge of the mountains, that the fugitives were making for the toll road, traveling in a general northerly direction. He then made his way back to the ranger station and telephoned to the sheriff's office at La Grande, talking to a deputy sheriff by the name of McIlroy, to whom he imparted his opinion as to the likelihood that the fugitives were traveling northerly and would appear upon the toll road, in the vicinity of the toll-gate. McIlroy in turn, informed McLachlin of the communication made by Courtney, and the former called Courtney on the telephone and interrogated him closely as to the ground of his opinion. McLachlin then gathered together the persons included in the La Grande posse,

and by automobile proceeded toward the toll-gate, and when they arrived near Summerville, they were informed that some person was at a near-by telephone, endeavoring to call the sheriff's office at La Grande. The person thus calling proved to be Herman Rosenberg of the Pendleton posse. The Pendleton posse had followed for several hours the trail of the fugitives, which they had earlier discovered and had definitely determined that they were making for the toll road and would probably appear thereon near the toll-gate. Rosenberg, who was the most robust and athletic of their members, had been designated by Warnick to travel through the mountains to the nearest telephone and communicate with the sheriff's office at La Grande, with a view to having a posse intercept the fugitives at their point of appearance along or near the toll road. This Rosenberg did, and the posse in charge of McLachlin proceeded from Summerville to near the point where Rosenberg had indicated that Hart and Owen might appear, and observing a sheep camp near by, went to the same to make inquiries concerning the fugitives. There they found and captured them.

For several days, and until Hart and Owen were captured, the claimants Alfred Smith and Claude Miles each furnished and used the automobile owned by him for transportation of the searchers from place to place.

1. An offer of reward and acceptance of the offer before it is revoked results in a contract, which imposes upon the party offering the reward, an obligation to pay the same: 23 R. C. L. 1115; 34 Cyc. 1739, 1752; 24 Am. & Eng. Ency. of Law (2 ed.), 955; *Ryer* v. *Stockwell,* 14 Cal. 134 (73 Am. Dec. 634);

*Janvrin* v. *Town of Exeter,* 48 N. H. 83 (2 Am. Rep. 185).

2. The offer of a reward may be accepted by any part of the public, if, as in each of the cases under consideration, it is offered to the public: 23 R. C. L. 1125; 34 Cyc. 1738; *Zwolanek* v. *Baker Mfg. Co.,* 150 Wis. 517 (137 N. W. 769, Ann. Cas. 1914A, 793, 44 L. R. A. (N. S.) 1214). Such acceptance is indicated by substantial performance of the services and accomplishment of the result for which the reward is offered, and in no other manner: 23 R. C. L. 1128; 34 Cyc. 1743; *McClaughry* v. *King,* 147 Fed. 463 (8 Ann. Cas. 856, 7 L. R. A. (N. S.) 216); *Kinn* v. *First Nat. Bank,* 118 Wis. 537 (95 N. W. 969, 99 Am. St. Rep. 1012); *Williams* v. *West Chicago St. R. R. Co.,* 191 Ill. 610 (61 N. E. 456, 85 Am. St. Rep. 278); *Haskell* v. *Davidson,* 91 Me. 488 (40 Atl. 330, 64 Am. St. Rep. 254, 42 L. R. A. 155).

3. Where the services requested in an offer of reward are of a character, and are made under circumstances, that require or permit the co-operation of numerous individuals for the accomplishment of the desired result, several persons by concerted action may join in performing the services, whereby that result is obtained, and thus become entitled to the reward, in which case the reward is to be divided among them according to the relative value of their acts: 34 Cyc. 1750; 23 R. C. L. 1133; *Elkhorn Valley Lodge* v. *Hudson,* 59 Neb. 672 (81 N. W. 859); *Janvrin* v. *Town of Exeter,* 48 N. H. 83 (2 Am. Rep. 185); *Fargo* v. *Arthur,* 43 How. Pr. (N. Y.) 193.

The rewards under consideration are to be construed in the light of the circumstances existing at the time and under which they were offered. At that time Hart and Owen, with their associates, had fled

into the Blue Mountains, a region that was roughly
timbered, sparsely settled and without highways.
Pursuit of the fugitives had been taken up by a large
number of citizens, who were acting more or less in
concert. Their capture involved the discovery of the
trail or trails that they had taken, their probable des-
tination, their interception, location and apprehen-
sion, which in view of the nature of the country and
the difficulty of pursuit through the same, contem-
plated the services of several persons for the accom-
plishment of the result desired.

The evidence establishes that, with the exception
of Steiner, the claimants to whom the Circuit Court
made awards, acted in concert in effecting the capture
of Hart and Owen. The acts of each contributed in
some appreciable measure in bringing about the de-
sired result, and the acts of all of them together
produced that result, thereby entitling each of them
to participate in the reward.

4. The claimant Steiner did not act in concert with
the others who effected the capture of the fugitives.
He furnished the pursuers with the first authentic
information they had obtained concerning the where-
abouts of the fugitives, but he did not take up the
pursuit. Steiner performed the initial act or service
in the series of acts performed which led immediately
to the capture of Hart and Owen; the service per-
formed by him put in motion all the subsequent
activities resulting in the capture; for four days the
searchers had been exerting themselves to discover
the very information which Steiner furnished, but
without definite clue.

Acting upon the information given by Steiner, the
posse quickly captured the fugitives: they would not
have been captured until much later if Steiner had

not promptly given the information, and they might have eluded capture entirely. That information contributed proximately to. the capture of Hart and Owen. Steiner has a persuasive claim upon those to whom he gave the information to a portion of the reward, which in equity and good conscience should be recognized.

There are cases holding that where the efforts of several claimants who did not act in concert contributed to produce the desired result, the reward in a proper case will be apportioned equitably among them: 23 R. C. L. 1133; *Bloomfield* v. *Maloney,* 176 Mich. 548 (142 N. W. 785, Ann. Cas. 1915B, 662, and note); *Kinn* v. *First Nat. Bank,* 118 Wis. 537 (95 N. W. 969, 99 Am. St. Rep. 1012).

The funds are in court and all the parties are before the court; without adopting the doctrine of the authorities last cited for application in all cases, we hold that Steiner is entitled to an equitable portion of the rewards.

The apportionment made by the Circuit Court takes into consideration the relative value of the services of the respective claimants, and we think awards to each the share to which he is equitably entitled.

The decree of the Circuit Court is affirmed.

AFFIRMED. REHEARING DENIED.