## COTTON v. DOWNS.

### Opinion delivered April 27, 1925.

1. REWARDS—RIGHT TO PARTICIPATE IN.—Persons pursuing robbers in an effort to secure rewards offered for their capture, working independently of each other with no agreement for concerted action, are not entitled to participate in such rewards where the capture was effected by others.

2. REWARDS—RIGHT TO SHARE IN.—Where bank robbers were being pursued by parties working independently of each other, one who first discovered the robbers, and, in attempting to effect their capture, pursued them into the hands of others, was entitled to share in the reward, it being clear that but for his pursuit they would not have been captured at that time and place.

Appeal from Benton Chancery Court; *G. T. Sullins,* Special Chancellor; reversed.

*Vol T. Lindsey, Rice & Rice* and *W. O. Young,* for appellant.

*A. L. Smith,* for appellee.

HUMPHREYS, J. This suit was commenced in the chancery court of Benton County by Henry Cotton against the Benton County Bankers' Association, the Maryland Casualty Company, and the Protective Rewards Committee of the Arkansas Bankers' Association, to recover the several standing rewards offered by each of them for the capture and conviction of any bank

robber. He alleged that he effected the capture of Perry Ingram and Fred Martin, who robbed the State Bank of Decatur, between one and two o'clock on the afternoon of February 28, 1923, and who afterwards pleaded guilty to the crime and were sentenced to serve a term in the penitentiary as punishment therefor. C. A. Downs and A. Brogdon filed their interplea, alleging that they captured the robbers, and were entitled to the rewards. J. S. Scott, Pat Howard, W. L. Strickland, Ray M. Scroggins, Louis Miller, Walter Bryson and J. S. Strickland filed their interventions alleging that the capture of the robbers was the direct result of the efforts of the plaintiff, the interpleaders and interveners, and prayed for an equal *pro rata* share of the rewards.

Zack Cotton also filed an intervention, alleging that he participated in the capture of the robbers, and prayed for a portion of the rewards. The defendants entered their several appearances, and were permitted to pay the several rewards in to the clerk of the court, under the terms of the offers to the effect that, where more than one person should claim the rewards, the rights of the claimants should be adjudged by the chancery court.

Pursuant to the terms of the offers, the cause was submitted to the chancery court upon the pleadings and testimony adduced by the several claimants, which resulted in a decree adjudging the entire amount of the several rewards to the interpleaders, C. A. Downs and A. Brogdon, after deducting the cost of the proceeding, from which decree an appeal has been duly prosecuted to this court.

The robbers, several other parties, and all the appellants except the Stricklands, testified in the case; so the record is quite voluminous. It would extend this opinion to an unusual length to set out the substance of the testimony of each witness, so only a general summary of the testimony as a whole will be attempted.

The robbers were inexperienced young men in crime, Perry Ingram being a railroad man from Harrison, Ark-

ansas, and Fred Martin being a miner from Weir, Kansas. They entered the State Bank of Decatur between one and two o'clock on February 28, 1923, and successfully effected a daylight robbery. They escaped with more than $2,000, consisting of five sacks of silver and a large amount of greenbacks. They hurriedly left Decatur in an automobile, driving in a northwesterly direction toward the Oklahoma line, into a wild, mountainous region, where they might easily conceal themselves in the woods, ravines, and gorges, and which region would serve as a shield or protection against their probable pursuers until the darkness of the night would enable them to get out of the country. After driving very rapidly for a distance of seven miles, they abandoned the car, first setting it on fire, and hastened with the money and their firearms into the woods. News of the robbery was telephoned to Gentry, other nearby towns, and throughout the country. As soon as the robbery was noised abroad, four separate parties of men, acting independently, procured arms and hotly pursued the robbers towards the Oklahoma line. Two of these parties left out of Decatur, and two out of Gentry. The first party to leave Decatur was headed by Henry Cotton, a man between sixty and seventy years of age, weighing over 200 pounds. He hastily procured a shotgun and eight cartridges loaded with No. 4 shot. There were three other armed men in the party, viz., Zack Cotton, his son, Pat Howard, and Carl Strickland. The second party to leave Decatur was headed by the constable of the township, J. S. Scott. There were four others in the party, viz., Walter Bryson, Luther Strickland, Ray Scroggin and Louis Miller. Miller owned the car in which they traveled, and was unarmed. The first party to leave Gentry was Marion Wasson, in company with Dan Pyeatt. Marion Wasson was the president of the Benton County Bankers' Protective Association. The second party to leave Gentry was headed by C. A. Downs. There were three other men in the party, viz., A. Brogdon, Arthur

Steele, and Clarence Ratcliff. George Maples, the sheriff of the county, also joined in the chase. The several parties pursued the robbers in automobiles, and none of them knew that the others were in pursuit of the robbers, except as they came upon each other at different times in the chase. Cotton and his men first discovered the burning car which the robbers had abandoned. While they were engaged in putting out the fire and saving the car, Marion Wasson and Dan Pyeatt drove up. They concluded to go on west and try to head the robbers off before they reached the Oklahoma line. After Wasson and Pyeatt had gone on, and during the time Cotton and his party were putting out the fire, Scott and his party arrived on the scene. After rolling the car into Mrs. Tibbs' yard, near by, the Cotton party and Scott party returned to their cars and drove in a westerly direction, to a point at the end of the ridge, from which they could get a good view of the surrounding country. After Marion Wasson and Dan Pyeatt left the Cotton party, they came upon Downs and his party, some distance to the west, in the vicinity of Coon Hollow. Wasson informed Downs and his party that the robbers had abandoned and set fire to the car at the Tibbs place, and had entered the woods. Wasson again concluded to go further west, and Clarence Ratcliff and Arthur Steele decided to follow Wasson and Pyeatt. Downs and Brogdon decided to leave the car and search for the robbers in Coon Hollow; so they got out of the car and proceeded to do so. Several of the men in the Cotton and Scott parties thought they saw the robbers in the large hollow adjacent to the high point where they had driven to get a good view of the country, but the men they took to be the robbers immediately passed out of their sight. These two parties broke up into smaller parties of twos and threes and searched out the woods in different directions for the robbers. Henry Cotton and those with him returned to the point where they had left the cars, and decided to go in Miller's car down to the Keith place, about one-half mile distant. After getting to the Keith

place, Cotton proceeded to the top of a hill, where he could get a better view of the surrounding country. Scott was of the opinion that they could catch the robbers at the bottom of the hill as easily as they could on top. Miller followed Cotton about half-way up the hill, and stopped. Scott remained at the bottom of the hill. After reaching the top, Cotton observed two men with Winchesters at a distance of about 100 yards from him. He thought they belonged to his party, but, when they had approached within fifty yards, he concluded that they were the robbers; so he asked Miller, who was in hearing distance, to come to him. The robbers heard him, turned in the direction of Coon Hollow, and began to run. He ordered them to halt, and, when they refused to do so, he fired at them, and continued to shoot until he lost sight of them. On account of his weight he was unable to keep up with them, but he followed them and shot his gun in the air from time to time to attract the attention of those whom he had left behind in his party. C. A. Downs and A. Brogdon, who had been searching for the robbers in Coon Hollow, heard a shot. They talked about it, and finally concluded that it was fired by a squirrel hunter, as they heard no others. While sitting near a creek which runs through the hollow, they observed two men hurriedly coming toward them off the mountain. They concluded that they were the robbers, since they were heavily armed; so Downs advised Brogdon to move away from him a short distance, and not to shoot. They both stooped down, and waited until the men came across the creek into an open space about forty or fifty feet from them. Downs then arose and leveled his rifle upon them, and demanded that they drop their guns and throw up their hands. They dropped their guns, but one of them hesitated about throwing up his hands. Downs then resorted to the ruse of ordering, in a loud voice, every one to close up. The other then raised his hands. Downs continued to cover them with his rifle, and requested Brogdon to take their pistols. Brogdon immediately

complied with his request, and, after taking their pistols, covered them with same until Downs relieved them of the greenbacks they had stolen from the bank.   The prisoners requested cigarettes, which were given them, with the understanding that they should not lower their hands. While they were smoking, Downs gave a blast of his horn, and shot rapidly into the air to attract the attention of Wasson, Pyeatt, Steele and Ratcliff, who had left them shortly before and gone in a westerly direction in the hope of heading the prisoners before they reached the Oklahoma line.   The testimony is conflicting as to the order in which the various parties arrived in response to the call.   Cotton testified that he was in hot pursuit of the fugitives when they ran into Downs and Brogdon, and that he was the first to arrive.   Others testified that quite a crowd had gathered when Cotton reached the scene. Miller and Scott came up in a short time.   The sheriff arrived, and took charge of and handcuffed the prisoners. The prisoners testified that they were captured about fifteen minutes after Cotton discovered and shot at them, and that they had run a little over a quarter of a mile in an endeavor to escape from him.   They were taken back to the large hollow where they were first seen, for a few moments, by three men in Cotton's and Scott's parties. The prisoners had hidden the five bags of silver over in the large hollow, and they were found, and returned along with the greenbacks, to the bank.

It is apparent from the *resumé* of the testimony, which we think substantially correct, that no concert of action had been agreed upon when the several parties entered upon the endeavor to earn the rewards by complying with the terms of the offers.   The fact that Marion Wasson and his companion, Dan Pyeatt, as well as Arthur Steele and Clarence Ratcliff, claimed no part of the rewards, is significant as showing that no agreement for concert of action had been entered into between the several parties before an endeavor was made to earn the rewards.   Only a short time before the capture was

effected, Wasson and Pyeatt had come in contact with
Downs' party, and had informed them that the robbers
had abandoned their car and were on foot in the woods.
Arthur Steele and Clarence Ratcliff had brought Downs
and Brogdon to Coon Hollow. This points to the fact
that no concert of action was agreed upon between the
several members of the Downs party, which left Gentry
together, much less that any arrangement for concert of
action had been agreed upon between the Downs, Cotton,
and Scott parties. In fact, the record reveals that, when
these several parties were organized and went in pursuit
of the robbers, neither party knew of the action of the
other or that the other had entered upon the search. The
record therefore clearly presents a case of parties acting
independently of each other in an endeavor to earn
rewards by capturing and convicting bank robbers. This
being the case, we cannot agree with the contention of
the interveners that all parties participating in the search
should receive an equal share of the rewards. There
was no agreement upon which to base such a contention.

The rule of law applicable to the facts in the case is
that "a reward may be apportioned equally among sev-
eral claimants whose efforts contributed to produce the
result for which the reward was offered." It seems to us
that this is the only fair and just rule to apply where the
joint acts of several claimants who acted independently
of each other resulted directly in the capture of the rob-
bers. 23 R. C. L. 1133; 73 Am. Dec. 638; *Roger* v.
*McCoach,* 66 Miss. Rep. 85, 120 N. Y. S. 686; *Elkins* v.
*Wyandotte County Commissioners,* 92 Kan. 299. We think
the acts of Henry Cotton contributed directly to the cap-
ture of the robbers. He met them face to face in the woods,
and attempted to arrest them, single-handed. When they
refused to yield, he fired upon them four times in quick
succession, and hotly pursued them into the very hands
of Downs and Brogdon. The prisoners themselves admit
that they were attempting to avoid arrest by Henry Cot-
ton when captured by Downs and Brogdon. It is quite

apparent from the record that Downs and Brogdon would not have come in contact with the robbers had they not been driven into their hands by Henry Cotton. They changed their direction from north to west when he fired upon them.

He is therefore entitled to an equitable apportionment of the rewards, and the decree is reversed and remanded, with directions to apportion the amount of the rewards equally between Downs, Brogdon and Henry Cotton.