# Wytheville

EDWARD JOHNSON v. W. ALLEN PERKINS AND OTHERS.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*S. M. Nottingham,* for the appellant.

*Shackelford & Robertson, DeJarnette & DeJarnette, A. Plunket Beirne* and *A. Barclay Taliaferro,* for the appellees.

HOLT, J., delivered the opinion of the court.

On July 29, 1934, Captain Albert T. Barr, who had been in Washington, started to his Albemarle home. On the Orange and Fredericksburg highway, at the border of Orange and Spotsylvania counties, by Wilderness Run bridge, he met with an accident. Dazed by its shock he left his car, wandered away and was lost. On Monday and Tuesday following search was made without avail. His family became alarmed and then published and widely posted this notice:

"$1,000 Reward.

"We have been authorized by his family to offer a reward of One Thousand Dollars for information which enables us to locate Capt. Albert T. Barr. Capt. Barr left Washington Sunday night, July 29th, and his wrecked automobile was found late the same night at Wilderness Run between Fredericksburg and Orange, Va. He is about six feet tall, weight about 175 lbs., partially bald, short mustache and teeth recently removed.

"PERKINS & BATTLE,
"Charlottesville, Virginia."

Captain Barr was found and a number of men came forward to claim the reward. Messrs. Perkins and Battle, being unwilling to assume the burden of decision, filed

their bill of interpleader and made these claimants parties:

Lindsay C. Woolfolk answered and said that he was entitled to a part of the reward. Edward Johnson answered and said that he was entitled to all of it. Harry W. Ellis in his answer claimed all of it or at least a substantial part thereof. Stark Kendall in his answer claimed it all. A like claim was made by John Knighton. Asa Bell said that nothing was due him from the interpleaders but that he had notified Stark Kendall, who made search on numerous occasions and at divers times, and that if and when Kendall recovers he confidently expects from him fair compensation for services rendered to him.

The cause came on to be heard on evidence taken in open court. Its judgment was "that the reward in the bill mentioned be divided (subject to costs) among the claimants as follows: To Stark Kendall, $500.00; to Edward Johnson, $200.00; to Harry W. Ellis, $200.00; to John Knighton, $100,00."

Ellis said that on Sunday night, July 29th, he was traveling along this Orange and Fredericksburg highway and came upon Barr's wrecked automobile while the engine was still hot, but saw no trace of any one. On Wednesday following he chanced to see Senator Battle, of counsel for Barr's family, in Orange and told him all that he knew. Battle who was then without information of any kind, gave him a copy of the offer of reward. On the next day, Thursday, when in a car with his uncle, on the road between Monrovia and Daniel's Post Office, about midday they saw a man walking in the road who answered the description given him of Captain Barr. They entered into a conversation with him but found him reluctant to talk. He said however, "that he was going up near Charlottesville and asked about the road to Gordonsville." Ellis offered to give him a ride which was declined, and set out for Orange to notify the sheriff of what he had seen that he might notify Barr's family, which was done. He then went with the sheriff to find Captain Barr. That

search was unavailing. In answer to the sheriff's message, Senator Battle and Captain Barr's brother late that afternoon joined him near Daniel's Post Office. He satisfied them that the man seen was the man lost. In response to this information search was then made on a wide scale, but claim is not made that Captain Barr was found by him or by those searching with him, although on Friday morning Woolfolk, who was one of them, said that he heard John Knighton say that he had seen a man whom he took to be Barr from the description given.

Edward Johnson, a colored man, lives in Orange county on a public road leading from Nasons to Lahore. On Friday evening between six and seven o'clock, W. B. Young sheriff of said county, came to his home, told him of the disappearance of Captain Barr, described him and asked the witness to be on the lookout, not to arrest Barr if found, but to keep him in sight and to notify that officer at once. Like everybody else, he was moved by this offer of reward, and so in a short time thereafter in his car with his wife, Edna, his brother, Isaiah, and his friend, Alfred Williams, started down the road to Lahore. On the way they overtook a man who answered the description given him by the sheriff, drew up by this stranger, and asked if he was Captain Barr. That gentleman answered that he was. Acting under this instruction, Johnson went slowly along the road, keeping Captain Barr in sight, his purpose being to announce his discovery to the sheriff from a telephone in Jackson's store at Lahore, which was about 100 yards ahead.

When they reached Lahore, Johnson "stopped his car and requested his wife, his brother, Isaiah Johnson, and his friend, Alfred Williams, to watch Captain Barr on the road until he, your respondent, could go to the Jackson store to call Sheriff Young; that he went to the store and reported to Mr. Marshall Jackson that he had found the missing man, Captain Albert T. Barr, and wanted him to telephone to sheriff Young to come to Lahore at once." He then rejoined his party, who in the meantime had Barr

under observation, and followed him slowly down the road to Brockman's filling station not far away. He told people collected there of his discovery. Among them was Stark Kendall. Asa Bell, who had been at Jackson's store and who was Kendall's friend, had also told him of Johnson's find. Barr continued down the road for a short distance past this filling station. He was followed and stopped by Kendall who invited him to get into his car. He hesitated, but Kendall insisted. He did get in and was taken by Kendall to the Barr home in Albemarle county. At no time did Johnson lose sight of Barr from the time that he first found him until Kendall took him away, except when he was trying to phone to the sheriff from Jackson's store at Lahore.

Woolfolk is another claimant. Robert Jackson, on August 3rd, told him that a man answering Barr's description had been to his mother's home on the day preceding. Ellis told him of the reward offered and that he also had seen him. They searched for some time, found nothing and went back to the Ellis home. After dinner he went out again to see what could be done and was at Jackson's store in Lahore about seven o'clock that night when Johnson came in and made the announcement, saying that "the man you are looking for is going down the road." Woolfolk, with others present, went out to take a look, satisfied himself as to identity and called Sheriff Young over the 'phone. The sheriff was not at home. He continued through his sister his efforts to locate the sheriff. He also went on down to the filling station, saw Barr get into the Kendall car and undertook to follow him "for the purpose of giving assistance in the event of trouble," but in a short time ran out of gas. Afterwards he came to Orange Courthouse and phoned the information which he had to Captain Barr's brother.

Kendall is another claimant. He knew about the reward and was on the lookout for Barr, and had heard that he had been seen. In the prosecution of the search he and Bell went to Jackson's store, where Bell remained.

He went on to Brockman's filling station. Bell, who was in the procession which moved out from Jackson's store upon Johnson's announcement, came up and told him that Barr was coming down the road. He followed Barr for 130 yards beyond this filling station, stopped him, induced him to get into his car, and took him to Albemarle county and to his Keswick home.

Last is Knighton. On Friday he and his wife saw a man pass their home, who answered to Barr's description, and concluded that the best thing he could do was to follow him but his automobile was out of condition and it took him two or three hours to start. All of this was in the early morning. He reported to others what he had seen and continued his search until late Friday evening. His efforts were futile and he never saw Barr again.

The purpose of the reward is plain. Captain Barr's family did not want him to be arrested. They did not even ask that he be detained, but they did wish to find him, and were willing to pay $1,000.00 "for information which enables us to locate Captain Albert T. Barr."

█ Where there is concert of action and where the parties undertake search as a joint enterprise, a reward offered should be equitably apportioned. 23 R. C. L., 1133; *Umatilla County* v. *Estes,* 105 Ore. 248, 208 P. 761.

In certain circumstances there should be an apportionment, even though such search be not a joint undertaking but is prosecuted independently by the several claimants:

" 'A reward may be apportioned equally among several claimants whose efforts contributed to produce the result for which the reward was offered.' It seems to us that this is the only fair and just rule to apply where the joint acts of several claimants, who acted independently of each other, resulted directly in the capture of the robbers." *Cotton* v. *Downs,* 168 Ark. 736, 271 S. W. 340, 342.

█ "Where a reward is offered for information, and several persons furnish distinct pieces, which combined make a perfect whole, it may be equitably apportioned

amongst them, a bill of interpleader being maintainable for such purpose." 21 Am. and Eng. Enc., p. 399.

■ Where there is no concert of action and where the efforts of a claimant bear no causal relation to the successful efforts of another, he has no standing in court.

■ "Where there are several claimants the one first complying with the terms of the offer is the one entitled to recover the reward." 21 Am. and Eng. Enc., p. 399; 54 C. J. 796.

"Where there is no such concert as to joint efforts, he alone is entitled to the reward who first substantially complies with the terms of the offer." *Stair* v. *Heska Amone Congregation,* 128 Tenn. 190, 159 S. W. 840, 841.

■ Beyond all question, Johnson was acting for himself alone. And beyond all question he found Barr on Friday. It is equally plain that nothing done by other claimants was the slightest assistance to him. That others searched for him in vain did not help, and equally unfruitful is the fact that others may have seen him and lost him. Kendall did not find him; he did not help to find him; all that he did was to take him home. Nothing that any of these claimants did bears causal connection with Johnson's successful search.

He should be given the entire reward, less costs, and not $200.00, the sum decreed to him by the lower court. For reasons stated, the decree appealed from should be reversed, and it is so ordered.

*Reversed.*