

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. Tom Wheat
Governor's Office
Austin, Texas

Dear Sir:

Opinion No. 0-3087-A
Re: Disposition of reward.

We are in receipt of your file on the Robertson reward, together with your letter asking that we advise you regarding payment of the reward.

Article 1007 of the Code of Criminal Procedure provides:

"The Governor may offer a reward for the apprehension of one accused of a felony in this State who is evading arrest, by causing such offer to be published in such manner as he deems most likely to effect the arrest. The reward shall be paid out of the State treasury to the person who becomes entitled to it upon a certificate of the Governor reciting the facts which entitle such person to receive it."

Pursuant to this authority, Governor W. Lee O'Daniel, on September 18, 1940, offered a reward of $250.00 "for the arrest and delivery of the said unknown person or persons" (who murdered George R. Robertson, Chief Deputy Sheriff of Lamar County, Texas) "to the Sheriff of Lamar County, inside the jail door of said county". The proclamation stipulates that the reward is payable "on condition of the arrest, return and conviction of said fugitive within one year from this day".

Thereafter, two persons, Buddy Acker and T. R. Fowler, Jr., sought as the alleged murderers of Robertson, were apprehended and delivered into the hands of the Sheriff of Lamar County, Texas. Though it appears that this delivery was not "inside the jail door of Lamar County", we

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

think the circumstances precluded a literal compliance with condition of the offer. It appears that delivery of the two fugitives was actually made to the Sheriff of Lamar County-- but that, by reason of his fear that mob violence might occur if the fugitives were returned to Lamar County, the Sheriff took the prisoners to Dallas County for safekeeping. There was, in our opinion, a substantial compliance with this condition.

It does not appear from the file that Acker and Fowler have been convicted of the murder of Robertson. You advise that both are in the penitentiary. It does not follow, necessarily, that they were incarcerated pursuant to their conviction for the murder of Robertson. It must appear with certainty that they have been convicted of that murder--else, as pointed out in our opinion No. O-3087, the condition upon which the reward is payable has not been met.

Assuming that your investigation confirms your surmise that the incarceration of Acker and Fowler in the penitentiary is pursuant to a conviction for the murder of Robertson, the question then is presented: Has the reward been earned; if so, by whom, and in what amounts to each?

At the outset, it appears conclusively that the persons participating in the arrest of Acker were not participants in the arrest of Fowler, and vice versa. Consequently neither set of claimants, alone, satisfied the conditions of the reward. Upon principles announced by authorities hereinafter to be cited, therefore, a case is presented for equitable apportionment of the total amount of the reward offered between those participating in the arrest of Acker and those participating in the arrest of Fowler. Since there is nothing to suggest any possibility of disparity in the value of the respective services (and we can conceive of none) the case appears an apt one for the application of the principle "Equality is equity". Hence, in our opinion, the reward should be paid $125.00 to the apprehenders of Acker and $125.00 to the apprehenders of Fowler.

In determining the question of who is entitled to the reward for arresting each fugitive, and, if more than one is entitled to share in the reward for one fugitive, how much should be awarded to each person so entitled, a more difficult problem is presented. However, we are not without authority in the reported decisions announcing the rules by which the problem may be solved.

A preliminary question is readily decided. In the arrest of each fugitive peace officers participated. Ordinarily such officers may not be paid rewards for services rendered in line of duty, upon grounds of public policy. Hence it frequently becomes necessary to determine, when such officers claim rewards, whether the acts performed and constituting the basis for the claim were within or without the scope of their official duties. Not so here, however, for this reward was offered by the Governor under statutory authority, and the proclamation did not exclude peace officers acting in the discharge of their duty from the class of persons who might earn the reward by performing the required service. Under the established exception to the general rule, that an officer may receive a reward offered under legislative authority, though he performs the services required in line of duty, unless by the terms of the offer he is excluded from the class of persons who may accept it, it becomes unnecessary in this instance to determine whether the officers involved were acting in line of duty. (See our opinion No. O-1622 and authorities there cited--copy of which is attached.)

The following authorities will be helpful in determining the questions remaining to be discussed:

Where robbers were being pursued by parties working independently of each other, one who first saw robbers and in attempting to effect their capture drove them into the hands of others, it being clear that but for his pursuit they would not have been captured in that place and manner, held entitled to share in reward offered for capture and conviction of robbers. Cotton v. Downs, (Ark.) 271 S. W. 340.

One who furnished information which led to the capture of prisoners is entitled to an equitable portion of the reward offered for the capture of the prisoners, though not acting actively in concert with those who actually captured the prisoners. Umatilla County v. Estes, et al, 208 Pac. 761.

"Where the services requested in an offer of reward are of a character and are made under circumstances that require or permit the cooperation of numerous individuals for the accomplishment of the desired result, several persons by concerted action may join in performing

services whereby that result is obtained, and thus become entitled to the reward, in which case the reward is to be divided among them according to the relative value of their services. 34 Cyc. 1750; 23 R.C.L. 1133; Elkhorn Valley Lodge v. Hudson, 59 Neb. 672, 81 N. W. 859; Janvrin v. Town of Exeter, 48 N.H. 83, 2 Am. Rep. 185; Fargo v. Arthur, 43 How. Prac. (N.Y.) 193.

"The evidence establishes that, with the exception of Steiner, the claimants to whom the circuit court made awards acted in concert in effecting the capture of Hart and Owen. The acts of each contributed in some appreciable measure in bringing about the desired result, and the acts of all of them together produced that result, thereby entitling each to participate in the reward.

"The claimant Steiner did not act in concert with the others who effected the capture of the fugitives. He furnished the pursuers with the first authentic information they had obtained concerning the whereabouts of the fugitives, but he did not take up the pursuit. Steiner performed the initial act or service in the series of acts performed which led immediately to the capture of Hart and Owen. . . . That information contributed proximately to the capture of Hart and Owen. Steiner has a persuasive claim upon those to whom he gave the information to a portion of the reward, which in equity and good conscience should be recognized.

"There are cases holding that, where the efforts of several claimants who did not act in concert contributed to produce the desired result, the reward in a proper case will be apportioned equitably among them. 23 R.C.L. 1133; Bloomfield v. Maloney, 176 Mich. 548, 142 N.W. 785, Ann. Cas. 1915 B662, and note; Linn v. Bank, 117 Is. 537, 95 N.W. 969, 99 Am. St. Rep. 1012.

"The funds are in court and all parties are before the court. Without adopting the doctrine of the authorities last cited for application in all cases, we hold that Steiner is entitled to an equitable portion of the rewards.

"The apportionment made by the circuit court takes into consideration the relative value of the services of the respective claimants, and we think awards to each the share to which he is equitably entitled." Idem.

Mr. Tom Wheat, Page 5

See also: Benton v. Kentucky Bankers Assn, (Ky.), 277 S.W. 858; Maggi v. Cassiday, (Ia.) 181 N.W. 27; Forsythe v. Murnane, (Minn.) 129 N.W. 134; Elkhorn Valley Lodge v. Hudson, (Neb.) 81 N.W. 859.

The principles upon which the above decisions are predicated are recognized by the Texas courts. In the case of Tobin v. McComb, 156 S.W. 237, the San Antonio Court of Civil Appeals said:

"It is settled, as stated above, that a number of persons, either working together or separately, may render services of such a nature, and so comply with the terms of the offer, as to entitle them each separately or all jointly to share in the reward. When the evidence shows that no one of the claimants fully met the requirements of the offer of reward, but that their efforts combined fully complied with its terms, though they were working separately and even without knowledge of each other they may receive a division of the reward in proportion to their services. What services were rendered and what proportion of the reward each should receive are questions for the jury to determine from the evidence under appropriate charges from the court. (Citing authorities)".

Questions of fact and matters involving the exercise of judgment and discretion cannot be decided by this Department. These are matters which address themselves exclusively to the official or department vested with the authority by law to determine them--in this instance, the Governor. Hence we express no opinion as to the credibility of witnesses testifying by affidavit in support of these claims, we do not attempt to resolve conflicts in their statements, and we do not express any opinion as to the relative value of services rendered, upon which apportionment of the reward will be made.

From the evidence submitted, it appears that the apprehension of the fugitive Acker occurred as follows:

On the 11th of October, 1940, in San Jacinto County, Texas, Joe H. Wilson, having seen two men in the woods near his home who he believed to be the fugitives Acker and Fowler, notified, through his father R. A. Wilson, Sheriff Hogue of San

Jacinto County, volunteering to lead the officers to the place where he had seen Acker and Fowler. Sheriff Hogue called the Sheriff of Walker County for assistance. At a point near the hiding place of the fugitives, the following men assembled: Sheriff J. C. Hogue, Jr., and his deputies Dovie Johnson, J. W. Morrison, and G. C. Woodruff; Floyd Farris, Constable, Precinct 1, Walker County, Texas; A. F. Harrington, Dog Sergeant, Wynne State Prison Farm; W. G. McConnel, Chief Deputy Sheriff, Walker County; and Joe R. Wilson. Wilson was sent for by Sheriff Hogue to lead the searchers to the place where he had seen Acker and Fowler; Farris was asked by Hogue to join them in the search.

By mutual agreement, the men divided into two groups, one group to work up one bank of the creek and the other the opposite bank, toward the place where Wilson had discovered the fugitives. They flushed Acker and Fowler; Fowler escaped; Acker was captured. It seems one member of the posse held a gun on Acker; another searched him; another put the handcuffs on him; perhaps still another formally placed him under arrest. The evidence as to this phase is conflicting, but in the view we take of the matter, the conflict on this point is immaterial.

The evidence clearly indicates that Joe R. Wilson furnished information which led directly to the capture of Acker; that he likewise was an active participant in the group of men by whom the actual apprehension was effected. The evidence likewise clearly reflects that, by mutual agreement, express or tacit, all the men participating as members of the posse were engaged in a concerted action, in a joint enterprise having for its purpose the tracking down and arrest of Acker and Fowler.

This being the case, it is immaterial that one of the group effected the actual physical apprehension of Acker. His act in that respect is the act of all the parties to the concerted action or joint enterprise, and does not confer upon him a right to the reward to the exclusion of the others. All are entitled to share in the reward, and under the circumstances detailed it would seem that differences, if any, in

the relative value of the services rendered by all save
Wilson are so slight as to be immaterial on the question
of apportionment. Wilson, however, not only participated
as a member of the posse making the actual arrest, but fur-
nished the original information which proximately led to
the arrest. Whether, by virtue of this fact, Wilson's serv-
ices were of greater relative value, so that he should re-
ceive a larger proportion of the reward, and, if so, the
amount by which his portion should exceed that awarded to
the others, present questions of fact which the Governor,
not this Department, has exclusive authority to decide.

From the evidence before us, it appears that the
arrest of Fowler occurred substantially as follows:

At 2 a.m. Sunday, October 13th, 1940, Lawrence
Novakoski of New Waverly, Walker County, Texas, while help-
ing barbecue meat for a church picnic, saw a stranger loiter-
ing in the shadows. The stranger asked him for a light and
while extending the end of his burning cigarette for that
purpose Novakoski recognized, in the glare of the cigarette,
the face of the stranger as that of Fowler as it appeared
in a recent newspaper photograph which he had seen. Nova-
koski sought the local deputy sheriff W. Bell, and told him
of seeing Fowler. Bell searched and did not find Fowler;
Novakoski told him Fowler had gone down the Missouri Pacific
tracks toward Willis, and took Bell in his car two miles
down the track toward Willis, where Bell got out, walked
down tracks toward New Waverley, met and arrested Fowler,
returned with him to New Waverley, loaded him into Novakoski's
car, and Novakoski took them to Huntsville, where Fowler was
placed in county jail to await arrival of the Sheriff of
Lamar County.

The foregoing is Novakoski's version, which is sup-
ported by the affidavit of Toney Gregory.

The version of W. Bell is as follows:

Bell says a group of boys came to him and told him
there was a "suspicious character" near the church and that
they last saw him go in the direction of the gin; Bell asked
them to go show him the person and they refused; Bell went
and searched and could not find the person; saw some more
people and they told him they saw a person walking on the

railroad track; at the request of Bell one of the parties carried him in his car down road two miles; Bell got out, asked the others to go with him, they refused; Bell walked down railroad track, arrested Fowler, brought him to New Waverley; there "obtained a car and driver" and delivered Fowler to jail at Huntsville to await Sheriff of Lamar County.

It thus appears that there is no dispute in the evidence that Bell alone effected the physical taking of Fowler. The only doubt raised is as to Novakoski's connection with the transaction. If Novakoski's statement is correct, it appears that he recognized Fowler and communicated his information to Bell, a deputy sheriff, with the intent to cause Fowler's arrest; that he furnished Bell assistance by way of further information and otherwise, but not to the point of participating in the actual search, with its attendant physical risk. If Novakoski's statement be true, it seems clear that his information thus communicated proximately caused the arrest by Bell and he is entitled to share in the reward to the extent of the proportionate value of the services contributed by him toward the apprehension of Fowler. Novakoski's failure to participate with Bell in the actual search does not defeat his claim to a part of the reward, but is a circumstance to be considered by the Governor in determining the equitable proportion to which he is entitled.

On the other hand, while Bell's statement is not flatly contradictory of Novakoski's, it is, though general in its statements, of such a nature as to cast doubt upon the authenticity of the statements made by Novakoski. Bell does not mention Novakoski, but a group of boys; as communicating to him, not an identification of Fowler, but a mere suggestion of the presence of a "suspicious character" at the church; Bell speaks of "some more people"--not the boys-- as advising him that the fugitive had gone down the railroad tracks; he does not even identify Novakoski as the driver or owner of the car which took him down the tracks, or hauled him and the prisoner to Huntsville.

The question of Novakoski's participation, the nature and extent thereof, is a pure question of fact, which this Department cannot solve. To assist the Governor in

determining it, we might suggest that Bell be called upon for a more detailed statement under oath; and that both he and Novakoski be asked to submit such further supporting evidence as may be available to them, from other witnesses.

Finally, we call your attention to the fact that the statute provides for the payment of the reward "upon the certificate of the Governor reciting the facts which entitle such person to receive it". It would seem, therefore, that the finding of the Governor upon the facts, and his decision as to apportionment of the reward, is conclusive. State v. Dinkins, 77 Miss. 874, 27 So. 832, where, in an action against the State to recover a reward offered by the Governor, the court said: "The offering of rewards and the payment of them are matters entrusted solely to the discretion of the Governor" and his action "cannot be coerced, nor can the effect of his refusal to act be evaded by an application to the judicial department of the government".

We return your file herewith.

Yours very truly

APPROVED NOV 26, 1941

(signed) Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By            (signed)
         R. W. Fairchild
            Assistant

RWF:mp

APPROVED
OPINION
COMMITTEE
BY B. W. B.
CHAIRMAN